UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| **JOSEPH SYLVESTER AND MELINDA SYLVESTER** | * * * | CIVIL ACTION NO._____ |
| **VERSUS** | * * | |
| | * | JUDGE _____ |
| **TALOS ENERGY OFFSHORE, LLC, TALOS ENERGY, LLC, TALOS ERT LLC, RODI MARINE L.L.C., RODI MARINE MANAGEMENT, LLC and WOOD GROUP PSN, INC.** | * * * * * * | MAGISTRATE JUDGE_____ |

## COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes plaintiffs, **JOSEPH SYLVESTER** and **MELINDA SYLVESTER** ("Plaintiffs"), persons of full age of majority domiciled and residing in, and citizens of the Parish of St. Landry, State of Louisiana, who represent:

1. Defendants, **TALOS ENERGY OFFSHORE LLC, TALOS ENERGY, LLC, TALOS ERT LLC, RODI MARINE, L.L.C., RODI MARINE MANAGEMENT, LLC,** and **WOOD GROUP, PSN, INC.**, are liable unto Plaintiffs, independently, jointly, severally and/or *in solido*, for the full sum of the amount of damages sustained, reasonable in the premises to be proven at the trial on the merits, plus interest from the date of judicial demand until paid, and for all costs of these proceedings and for all general and equitable relief that Plaintiffs are entitled to for the events that occurred on the Outer Continental Shelf and/or within the navigable and territorial waters of the United States of America, State of Louisiana, on or around September 23, 2021, which ultimately led to the traumatic and serious injuries of Plaintiff JOSEPH SYLVESTER on September 23, 2021, and the injury to MELINDA SYLVESTER.

1

## Jurisdiction and Venue

2. This Court has jurisdiction over this matter pursuant to its admiralty and maritime jurisdiction under 28 U.S.C. §1333, and its federal question jurisdiction under 28 U.S.C. § 1331 and by virtue of the claims brought by Plaintiffs pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §1331, the provisions of 33 U.S.C. § 905(b) of the Longshore and Harbor Worker's Compensation Act, the General Maritime Laws of the United States and the laws of the State of Louisiana.

3. Federal admiralty jurisdiction and the application of the General Maritime Laws of the United States apply as the tort occurred on navigable water and JOSEPH SYLVESTER'S injury was caused by a vessel in navigable waters.

4. Pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, Plaintiffs designate the claims being asserted herein as admiralty and maritime claims, and bring this action on the "admiralty side" of this Court.

5. Venue is proper in this district and before this Court pursuant to 28 U.S.C. § 1391 as the accident forming the basis of this litigation occurred near a fixed platform on the Outer Continental Shelf off the coast of Louisiana and adjacent to this district and Court. Additionally, Defendants reside, conduct business, and/or can be found within the territorial jurisdiction and venue of this district and Court. All Defendants have significant ties to and/or regularly conduct and transact business within this district.

6. Made defendants herein are (collectively referred to as "Defendants"):

   a) **TALOS ENERGY OFFSHORE LLC**, a Texas corporation licensed to do business in the State of Louisiana and who is doing business in, and is otherwise subject to personal jurisdiction in the Western District of Louisiana and, who can be served through their agent for service of process: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816;

b) **TALOS ENERGY, LLC**, a Texas corporation licensed to do business in the State of Louisiana and who is doing business in and is subject to personal jurisdiction in the Western District of Louisiana and, who can be served through their agent for service of process: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816;

c) **TALOS ERT LLC,** a Texas corporation licensed to do business in the state of Louisiana and who is doing business in and is subject to personal jurisdiction in the Western District of Louisiana and, who can be served through their agent for service of process: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816. TALOS ENERGY OFFSHORE LLC, TALOS ENERGY, LLC AND TALOS ERT LLC will be referred to as TALOS.

d) **RODI MARINE, L.L.C.**, a Louisiana limited liability company, licensed to do business in the State of Louisiana and who is doing business from its principal place of business located at 2544 Southwest Evangeline Thruway, Lafayette, Louisiana 70508, and is subject to personal jurisdiction and resides in the Western District of Louisiana and who can be served through their agent for service of process, Donald "Wade" Guillory, 206 Bella Vista Parkway, Youngsville, Louisiana 70592;

e) **RODI MARINE MANAGEMENT, LLC**, a Louisiana limited liability company, licensed to do business in the State of Louisiana and who is doing business from its principal place of business located a 2544 Southwest Evangeline Thruway, Lafayette, Louisiana 70508 and is subject to personal jurisdiction and resides in the Western District of Louisiana and who can be served through their agent for service of process, Jody Jarrell, 208 Birdwatch Lane, Lafayette, Louisiana, 70508.  RODI MARINE, L.L.C. and RODI MARINE MANAGEMENT, LLC are hereinafter referred to as RODI MARINE;

f) **WOOD GROUP PSN, INC.** (hereinafter known as "Wood Group"), a foreign corporation, upon information and belief, incorporated under the laws of Nevada with its principal place of business in Houston, Texas and a registered office in Louisiana, authorized to do and doing business in the State of Louisiana and within this district with subject matter jurisdiction in this district, who can be served through its agent for service of process, United Agent Group, Inc., 1070-B West Causeway Approach, Mandeville, Louisiana 70471.

## Facts

7. At all material times and on September 23, 2021, plaintiff, JOSEPH SYLVESTER was working in the course and scope of his employment with Gulf Crane Service, Inc. ("Gulf Crane"), as a crane mechanic assigned to work on a job on the TALOS' platform known as South Marsh Island 130 A ("the platform") in the Gulf of Mexico.

8. At all material times and on September 23, 2021, TALOS owned and operated a fixed platform known as South Marsh Island 130 A ("SMI 130 A"), which was surrounded by navigable water, operating in the South Marsh Island Block 130 off of the coast of Louisiana in the Gulf of Mexico, which was affixed to the sea bed of the Outer Continental Shelf, and which was engaged in the exploration and/or production of oil and gas natural resources. At all pertinent times, Wood Group assisted in operating SMI 130 A and WOOD GROUP and its employees operated the crane at the time in which Joseph Sylvester was injured.

9. At all material times and on September 23, 2021, RODI MARINE was the owner and/or operator of the vessel M/V MISS PEGGY ANN ("the vessel"), an offshore supply ship, which provided vessel-related services, including personnel transportation in connection with the oil and gas operations being conducted on the platform. At all times pertinent, the M/V MISS PEGGY ANN was owned, operated, chartered, controlled, crewed and/or was owned by RODI MARINE.

10. At all material times and on September 23, 2021, Gulf Crane was providing mechanical maintenance and repair services to a crane located on the SMI 130 A platform.

11. On or about September 23, 2021, Gulf Crane dispatched JOSEPH SYLVESTER to the SMI 130A platform to perform a heavy lift inspection/maintenance on the platform's crane on SMI 130A.

12. On the morning of September 23, 2021, RODI MARINE's captain and crew navigated the M/V MISS PEGGY ANN, with Plaintiff JOSEPH SYLVESER aboard, to the SMI 130 A platform. At approximately 9:30 a.m. on that same morning, the RODI MARINE captain of the M/V MISS PEGGY ANN and its crew positioned the vessel near the SMI 130 A platform

so that Plaintiff Joseph Sylvester and another individual could be transferred from the vessel to the SMI 130 A platform by means of a crane-operated basket transfer.

13. At the time of the basket transfer of JOSEPH SYLVESTER, the weather conditions were windy and the seas were rough, and the captain of the M/V MISS PEGGY ANN had difficulty keeping the vessel in position as it moved with the seas.

14. At all pertinent times in connection with JOSEPH SYLVESTER's basket transfer, the deck of the M/V MISS PEGGY ANN was filed with large Conex boxes/storage containers and other equipment which covered the loading zone of the vessel. The loading zone is considered the area of the vessel's deck that was clear and safe to perform basket transfers and other work.

15. As a result of the obstructions of the loading zone of the vessel, Defendants decided to conduct the lift and transfer of JOSEPH SYLVESTER towards the front of the vessel. The personnel basket was placed at the front of the boat, among several metal Conex boxes which provided limited space to conduct the lift and the basket transfer of JOSEPH SYLVESTER. The section of the vessel's deck used to transfer JOSEPH SYLVESTER was unsafe due to the obstructions and other conditions mentioned herein.

16. At or about the same time, Plaintiff JOSEPH SYLVESTER properly entered the platform's personnel basket in anticipation of the lift by the platform's crane operator, which was operated by a crane operator employed by Wood Group and/or TALOS, or alternatively by an employee, agent, representative, or contractor of Wood Group or TALOS, for whom both companies were legally responsible.

17. Prior to the transfer of JOSEPH SYLVESTER, the lift and transfer were not adequately planned and coordinated by the crane operator on the platform and the deckhand, crew and the captain of the M/V MISS PEGGY ANN, who were employed by RODI MARINE. Upon

information and belief, the signal to began the lift of JOSEPH SYLVESTER from the M/V MISS PEGGY ANN was initiated by hand signals of the RODI MARINE deckhand.

18.     Upon starting the lift and basket transfer, the crane operator on the SMI 130 A platform initially quickly jerked the transfer basket, with Plaintiff JOSEPH SYLVESTER inside, from the deck of the M/V MISS PEGGY ANN which caused the basket to begin swinging.  At the same time, the RODI MARINE deckhand was not holding on to the tag-line attached to the personnel basket, which was designed to control the movement of the basket, while the crane operator hoisted the basket with JOSEPH SYLVESTER and another individual inside.

19.     Although the RODI MARINE deckhand gave the hand signal to begin the lift, the deckhand was not holding onto the tag-line attached to the personnel basket upon the initiation of the lift.  Defendants' actions and omissions caused the transfer basket to swing rapidly, as the crane operator lost control, causing the basket and JOSEPH SYLVESTER to crash into a metal Conex box on the deck of the M/V MISS PEGGY ANN with great force.  JOSEPH SYLVESTER's hip and body were slammed violently into a Conex box located on the deck of the M/V MISS PEGGY ANN causing serious injuries to JOSEPH SMITH as a result.

20.     Despite the collision of the personnel basket and Plaintiff JOSEPH SYLVESTER into the Conex boxes on the vessel, the platform's crane operator continued to lift JOSEPH SYLVESTER onto the platform.

21.     At all times while JOSEPH SYLVESTER was in the personnel basket and just prior to the lift from the vessel to the platform, JOSEPH SYLVESTER and the basket were in the line of sight of the platform's crane operator, the captain of the M/V MISS PEGGY ANN, and the crewmember/deckhand of the M/V MISS PEGGY ANN.  Yet, at no time did anyone exercise stop

work authority to halt the crane from lifting the basket and JOSEPH SYLVESTER due to the dangerous conditions surrounding the lift.

22. Additionally, no adequate job safety analysis, assessment, or planning of any kind were performed by anyone on the platform or the vessel prior to Plaintiff JOSEPH SYLVESTER's basket transfer.

23. At all times pertinent hereto, the M/V MISS PEGGY ANN was operated by RODI MARINE MANAGEMENT, LLC and/or RODI MARINE, L.L.C. and captained by an as of yet unidentified employee of RODI MARINE MANAGEMENT, LLC and/or RODI MARINE, L.L.C.

24. At all times pertinent hereto, the crane was attached to and a part of TALOS' platform, owned and operated by TALOS and all operations on the platform and crane were under the supervision of a supervisor and employees of TALOS and/or Wood Group.

25. At all times pertinent hereto, the crane was being operated by an employee and/or agent of TALOS and/or Wood Group.

26. At all times pertinent hereto, the deckhand was an employee of RODI MARINE, aboard the M/V MISS PEGGY ANN, and was assigned to steady the personnel basket with an attached rope and to signal the crane operator in connection with the transfer.

27. The occurrence in which Plaintiff JOSEPH SYLVESTER was injured and the injuries Plaintiffs sustained were proximately caused by the negligence and/or gross negligence on the part of Defendants, their agents, servants and/or employees, who were acting in the course and scope of their employment for Defendants at all times material to this cause of action, for which Defendants are responsible.

## Cause of Action 1 - Vessel Negligence

28. The above-described accident of September 23, 2021, resulting in injuries and damages to Plaintiffs, JOSEPH SYLVESTER and MELINDA SYLVESTER, was a direct and proximate result of the sole and/or joint and concurrent negligence, gross negligence and/or willful and wanton conduct of defendants, RODI MARINE MANAGEMENT, LLC and/or RODI MARINE, L.L.C, and their employees, agents, and/or other persons for whom RODI MARINE is responsible, including, but not limited to, the vessel captain, the deckhand and other crewmembers of the M/V MISS PEGGY ANN, in the following non-exclusive particulars:

a. Creating and/or allowing an unsafe condition and/or work environment on the deck of its vessel;

b. Ordering and/or allowing and/or directing the unsafe personnel transfer in question;

c. Disregarding rules and/or regulations created for the safety of workers during the transfer of individuals from the vessel;

d. Negligent flagman/ signalman /spotter operations;

e. Failing to properly utilize a tag-line;

f. Failing to adequately train and/or supervise deckhands, spotters and/or all other workers in the performance of their duties;

g. Failing to provide adequate manning for the tasks at hand;

h. Failing to ensure that all working areas, including loading and landing areas, involved were in all respects safe;

i. Failing to devise and implement an adequate safety protocol for the task at hand;

j. Failing to see what should have been seen and to do what should have been done in order to prevent the accident sued upon herein;

k. Failing to use reasonably safe means and methods to perform the transfer in question;

l. Failing to adequately inspect the condition of the vessel for the safe transfer of JOSEPH SYLVESTER;

m.  Failure to maintain control of the vessel;

n.  Failure to properly supervise the task being performed;

o.  Failing to properly follow the Coast Guard, OSHA, BSSE and other safety rules and regulations in existence in connection with the personnel transfer activities being conducted;

p.  Failing to provide a safe place to work and otherwise not complying with industry-standard safety policies, procedures and regulations;

q.  Failing to safely coordinate the activities of all Defendants for safety purposes;

r.  Failing to conduct the appropriate safety meetings and pre-job safety analysis;

s.  Failing to adequately plan and supervise the tasks being performed;

t.  Failing to safely address the weather conditions and seas;

u.  Failing to provide equipment for or ensure there was adequate and sufficient communication and/or communication equipment by and between the multiple persons involved in personnel transfer operations of JOSEPH SYLVESTER;

v.  Failing to maintain vessel and its appurtenances and/or equipment in a safe and reasonable state of repair;

w.  Failing to provide proper and adequate equipment so that the duties could be performed safely;

x.  Failing to render safe unreasonably dangerous conditions, including the lack of a clear and safe loading zone, which it knew or should have known existed at all material times;

y.  Failing to conduct the personnel transfer operations from a safe and clear area on the vessel's deck;

z.  Attempting to operate the vessel under the conditions that were unreasonably dangerous for personnel transfer operations;

aa. Failing to provide reasonable and safe access and means of ingress and egress to the platform and/or vessel;

bb. Failing to exercise stop work authority to prevent the crane operator from continuing to lower the personnel basket onto the vessel when it was obviously not safe to do so;

cc. Failing to take reasonable precautions for the safety of its crew including Plaintiff Joseph Sylvester;

dd. Utilizing improper, inadequate, and/or reckless work directives;

ee. Utilizing improper, inadequate and/or reckless job planning and/or coordination;

ff. Utilizing an improper, inattentive and/or reckless captain and crew;

gg. Improper, and/or inadequate supervision of the captain and crew;

hh. Failing to properly secure and/or guide the personnel basket during the transfer;

ii. Failing to properly direct the crane and its' operator in connection with the personnel transfer;

jj. Failing to conduct the personnel transfer properly and safely; and

kk. Violation of company rules and regulations and industry safety standards.

29. The above-described accident of September 23, 2021, and the injuries sustained by Plaintiffs, were caused in whole or part by RODI MARINE MANAGEMENT, LLC and/or RODI MARINE, L.L.C, and its employees, agents, and crew members of the M/V MISS PEGGY ANN.

30. Plaintiffs qualify for all benefits and protections under General Maritime law, and the right to punitive damages for the harms done herein.

31. Pursuant to 33 U.S.C. § 905(b) of the Longshore and Harbor Worker's Compensation Act, the Defendants, RODI MARINE MANAGEMENT, LLC and/or RODI MARINE, L.L.C. had the absolute and non-delegable duty to provide JOSEPH SYLVESTER with a safe vessel and properly trained and competent crew and RODI MARINE MANAGEMENT, LLC and/or RODI MARINE, L.L.C. are liable for their own negligence and that of their employees and/or representatives.

32. The M/V MISS PEGGY ANN was unsafe and RODI MARINE MANAGEMENT, LLC and/or RODI MARINE, L.L.C. and/or their employees were negligent under 905(b) for the

reason and the on the grounds set forth and alleged in Paragraph 28 above and Plaintiffs' injuries were a direct and proximate result of that negligence.

33. The above-described negligence of RODI MARINE MANAGEMENT, LLC and/or RODI MARINE, L.L.C. and its employees, deckhand and crewmembers was a direct cause of Plaintiffs' injuries and damages pleaded herein, and renders RODI MARINE MANAGEMENT, LLC and/or RODI MARINE, L.L.C. jointly, severally liable and *in solido* for all of Plaintiffs' damages.

### Cause of action 2 – Platform/Crane Negligence

34. The above-described accident of September 23, 2021, resulting in injuries and damages to Plaintiffs, JOSEPH SYLVESTER and MELINDA SYLVESTER, was a direct and proximate result of the sole and/or joint and concurrent negligence, gross negligence and/or willful and wanton conduct of defendants, TALOS ENERGY OFFSHORE, LLC, TALOS ENERGY, LLC, TALOS ERT LLC and/or WOOD GROUP and or their employees, agents, representatives, and/or other persons for whom these Defendants were legally responsible, including, but not limited to, the crane operator, which consisted more particularly, but not exclusively, of the following:

   a. Creating and/or allowing an unsafe condition and/or work environment;
   b. Ordering and/or allowing and/or directing the unsafe transfer in question;
   c. Disregarding rules and/or regulations created for the safety of workers during a personnel transfer by basket;
   d. Negligent crane operations;
   e. Negligent flagman/signalman/spotter operations;
   f. Failing to use reasonably safe means and methods of transferring individuals from vessels to its platform;

g. Failing to adequately train and/or supervise crane operators and/or all other workers in the performance of their duties;

h. Failing to provide adequate manning for the tasks at hand;

i. Failing to see what should have been seen and do what should have been done in order to prevent the accident sued herein;

j. Failing to provide a proper spotter, flagman or signalman to safely support the tasks at hand;

k. Failing to properly follow the Coast Guard, OSHA, BSSE and other safety rules and regulations in existence in connection with the personnel transfer activities being conducted;

l. Failing to provide a safe place to work and otherwise not complying with industry-standard safety policies, procedures and regulations;

m. Failing to safely coordinate the activities of all Defendants for safety purposes;

n. Failing to conduct the appropriate safety meetings and pre-job safety analysis;

o. Failing to adequately plan and supervise the tasks being performed;

p. Failing to maintain control of the personnel basket while lifting Plaintiff;

q. Failing to provide equipment for or ensure there was adequate and sufficient communication and/or communication equipment by and between the multiple persons involved in personnel transfer operations;

r. Failing to take all appropriate action and implement all appropriate polices and procedures necessitated by personnel transfer activities;

s. Failing to render safe unreasonably dangerous conditions which it knew or should have known existed at all material times, which includes, but not limited to, conducting the lift and transfer from an unsafe area of the vessel's deck;

t. Operating the crane while the vessel and conditions were not safe to do so and while the vessel was moving;

u. Attempting to operate the platform crane under the conditions that were unreasonably dangerous for personnel transfer operations;

v. Failing to provide reasonable and safe access and means of ingress and egress to the platform and/or vessel;

w. Failing to exercise stop work authority to halt the crane operations when it was obviously not safe to lift the personnel basket from the vessel;

x. Lifting the personnel basket from the vessel in such a location and in such a manner that caused Plaintiff to slam into a metal Conex box;

y. Working at an unreasonably dangerous speed and rate under the circumstances;

z. Despite the conditions of the wind, seas and the vessel's deck, these defendants provided the directive to transfer personnel, including JOSEPH SYLVESTER, to the platform by personnel basket, as opposed to other means or waiting until the conditions were safer for such a transfer;

aa. Utilizing improper, inadequate and/or reckless job planning and/or coordination;

bb. Utilizing an improper, inadequate and/or improperly trained crane operator;

cc. Utilizing an improper, inadequate, and/or defective crane, crane equipment and/or appurtenance;

dd. Improper and/or inadequate training of personnel;

ee. Improper and/or inadequate supervision of personnel; and

ff. Violation of company rules and regulation and industry safety standards;

35. At all times pertinent, the platform, the crane and the personnel transfer basket were owned and/or under the custody, care and control of TALOS ENERGY OFFSHORE, LLC, TALOS ENERGY, LLC., TALOS ERT LLC and/or WOOD GROUP.

36. Plaintiffs bring these claims against TALOS ENERGY OFFSHORE, LLC, TALOS ENERGY, LLC., TALOS ERT LLC and/or WOOD GROUP under the general maritime laws of the United States and/or alternatively under Louisiana law.

37. The above-described negligence of TALOS ENERGY OFFSHORE, LLC, TALOS ENERGY, LLC., TALOS ERT LLC and/or WOOD GROUP and/or its employees, agents, representatives of TALOS ENERGY OFFSHORE, LLC, TALOS ENERGY, LLC, TALOS ERT LLC, and/or WOOD GROUP, were a direct cause of Plaintiffs' injuries and damages pleaded

herein, and renders TALOS ENERGY OFFSHORE, LLC, TALOS ENERGY, LLC, TALOS ERT LLC and/or WOOD GROUP liable for all of Plaintiffs' damages caused thereby under applicable law.

38.   Plaintiff, JOSEPH SYLVESTER, was not negligent in the accident and did not contribute to the accident or his injuries.

39.   The M/V MISS PEGGY ANN was unsafe and RODI MARINE MANAGEMENT, LLC and/or RODI MARINE, L.L.C., and/or its employees were negligent under 905(b) for the reasons and on the grounds set forth and alleged in Paragraphs 28 hereinabove and Plaintiffs' injuries were a direct and proximately result of that negligence.

40.   Plaintiffs also specifically plead the doctrine of negligence per se as against all Defendants.

41.   Plaintiffs show that at all times pertinent hereto, the as of yet unidentified vessel captain, and the deckhand, and all other relevant employees were in the course and scope of their employment with defendants, RODI MARINE MANAGEMENT, LLC and/or RODI MARINE, L.L.C., and pursuant to the theory of respondent superior, and RODI MARINE MANAGEMENT, LLC and/or RODI MARINE, L.L.C. are legally responsible for all negligent acts of the vessel captain, the deckhand, or any other of their employees, who caused or contributed to the aforementioned accident.

42.   Plaintiffs show that at all times pertinent hereto, the as of yet unidentified crane operators, employees, and supervisors of the Talos Energy Platform in South Marsh Island, 130 A in the Gulf of Mexico, and all other relevant employees were in the course and scope of their employment with defendants, TALOS ENERGY OFFSHORE, LLC, TALOS ENERGY, LLC, TALOS ERT LLC, and/or WOOD GROUP, and pursuant to the theory of respondent superior, said

employer is legally responsible for all negligent acts of the crane operator and other responsible employees, agents or individuals, who caused or contributed to the aforementioned accident.

## **DAMAGES**

43. As a result of Defendants' actions and/or omissions which caused the September 23, 2021 injury to JOSEPH SYLVESTER, Plaintiff, JOSEPH SYLVESTER, has endured and in all likelihood will continue to endure severe pain and suffering, physical impairment, discomfort, disfigurement, distress, mental anguish, and other medical problems including the following injuries, rendering JOSEPH SYLVESTER disabled and in need of significant medical treatment, including injuries to his spine, lower back, including ruptured and/or herniated discs and nerve damage; hips, legs; veins, vascular system; blood clots, DVTs, sprained and strained muscles, tendons, and ligaments of the body; substantial pain and suffering, mental anguish and emotional distress and all injuries proven at the trial of this matter.

44. Plaintiffs, JOSEPH SYLVESTER and MELINDA SYLVESTER were caused to suffer severe and permanently disabling injuries as a result of said accident. Accordingly, Plaintiffs' itemize their damages as follows:

a. Medical expenses, past, present and future, in the amount reasonable in the premises;

b. Lost wages, past, present and future, in an amount reasonable in the premises;

c. Impairment of earning capacity, past, present, and future, in an amount reasonable in the premises;

d. General damages, including physical pain, suffering (past, present and future); disability (past, present and future); mental anguish and emotional distress (past, present and future); loss of enjoyment of life (past, present, and future); and loss of consortium (past, present, and future); in an amount reasonable in the premises;

e. Scarring and disfigurement; past, present, and future, in an amount reasonable in the premises;

  f.  Attorneys' fees and expert witness fees in the adjudication of this claim; and

  g.  Any and all other damages to be proven at the trial of this matter.

  45. Plaintiff, MELINDA SYLVESTER, has suffered and continues to suffer loss of consortium and society as a result of this accident and the resulting injuries to her husband, JOSEPH SYLVESTER.

  46. In addition to the damages set for supra, Defendants, **TALOS ENERGY OFFSHORE LLC, TALOS ENERGY, LLC, TALOS ERT LLC, RODI MARINE, L.L.C., RODI MARINE MANAGEMENT, LLC, and WOOD GROUP, PSN, INC.**, are also liable to Plaintiffs, JOSEPH SYLVESTER and LINDA SYLVESTER for punitive and/or exemplary damages for their respective gross, willful, wanton and/or reckless actions which constituted callous disregard for the safety of JOSEPH SYLVESTER and caused the subject accident and injuries.

  46. WHEREFORE, all premises considered, Plaintiffs, **JOSEPH SYLVESTER** and **MELINDA SYLVESTER**, pray that Defendants, **TALOS ENERGY OFFSHORE LLC, TALOS ENERGY, LLC, TALOS ERT LLC, RODI MARINE, L.L.C., RODI MARINE MANAGEMENT, LLC, and WOOD GROUP, PSN, INC.**, be duly served with a copy of this Complaint, to appear, and answer same and, that after legal delays and due proceedings had, there be a judgment in favor of Plaintiffs, **JOSEPH SYLVESTER** and **MELINDA SYLVESTER**, and against Defendants, **TALOS ENERGY OFFSHORE LLC, TALOS ENERGY, LLC, TALOS ERT LLC, RODI MARINE, L.L.C., RODI MARINE MANAGEMENT, LLC, and WOOD GROUP, PSN, INC.**, jointly, severally and *in solido* for compensatory damages and special damages in an amount that will adequately satisfy the demands of justice, together with legal interest from the date of judicial demand and for all costs of these proceedings.

Plaintiffs further pray that all costs of these proceedings and for any other relief to which Plaintiffs are entitled under law and evidence.

DATE: September 2, 2022       Respectfully submitted:

**LABORDE EARLES LAW FIRM. L.L.C.**

**By:** */s/ Nicholas R. Rockforte*
**NICHOLAS R. ROCKFORTE, Bar #31305**
*E-mail correspondence:* service@onmyside.com
**SCOTT F. HIGGINS, Bar #26924**
**MARY K. CRYAR, Bar #24062**
**WESLEY K. ELMER, Bar #23724**
**WILL MONTZ, Bar #29355**
1901 Kaliste Saloom Road (70508)
Post Office Box 80098
Lafayette, Louisiana 70598-0098
Phone: 337.261.2617
Facsimile: 337.261.1934
***Attorneys for plaintiffs, Joseph Sylvester and Melinda Sylvester***

*\*for all non-service relation communication, please direct to* nicholas@onmyside.com