UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JOSEPH SYLVESTER and MELINDA SYLVESTER** | \* CIVIL ACTION NO.: 6:22-CV-05192 <br> \* <br> \* |
| **VERSUS** | \* <br> \* |
| **TALOS ENERGY OFFISHORE, LLC TALOS ENERGY, LLC, TALOS ERT LLC, RODI MARINE, L.L.C., RODI MARINE MANAGEMENT, LLC and WOOD GROUP PSN INC. XYZ INSURANCE COMPANY** | \* **JUDGE DAVID C. JOSEPH** <br> \* <br> \* <br> \* <br> \* **MAGISTRATE JUDGE** <br> \* **CAROL B. WHITEHURST** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………………….3-4

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE/MOTION TO STRIKE OPINIONS OF DR. CHAD DOMANGUE……………………………………..4-16

I.   FACTUAL BACKGROUND……………………………………………………...4

II.  DR. CHAD DOMANGUE'S OPINIONS AND SUMMARY OF THE ARGUMENT ….6

III. LAW AND ARGUMENT………………………………………………………….9

    A. Burden of Proof Under Daubert …………………………………………...10

       1. Dr. Domangue's vascular opinions are unreliable because they are unsupported by any specialized knowledge that that will help the trier of fact understand the evidence or an issue………………………………………………………..12

       2. Dr. Domangue's opinions are unreliable because they are not based on sufficient facts or data……………………………………………………………………12

       3. Dr. Domangue's opinions are unreliable because they are unsupported by reliable principles and methodology……………………………………………………...13

       4. Dr. Domangue's opinions are unreliable because there is no evidence to suggest that his opinions satisfy the reliability factor……………………………………..14

CONCLUSION………………………………………………………………………………15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JOSEPH SYLVESTER and MELINDA SYLVESTER | * CIVIL ACTION NO.: 6:22-CV-05192 |
| | * |
| | * |
| VERSUS | * |
| | * |
| TALOS ENERGY OFFISHORE, LLC TALOS ENERGY, LLC, TALOS ERT LLC, RODI MARINE, L.L.C., RODI MARINE MANAGEMENT, LLC | * JUDGE DAVID C. JOSEPH * * * |
| and WOOD GROUP PSN INC. XYZ INSURANCE COMPANY | * MAGISTRATE JUDGE * CAROL B. WHITEHURST |

## TABLE OF AUTHORITIES

1. *Dana Richardson-Merrell, Inc.*, 857 F.2d. 823, 829 (D.C. Cir. 1988), *cert. denied*, 493 U.S. 882 (1989))..................................................................................................13

2. *Daubert* standards and Federal Rules of Evidence 702................4,7,10,11,12,13,15, 16

3. *Daubert v Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.579, 113 S.Ct.2786, 125 L.Ed.2d 469 (1993)..................................................................................................11

4. *Daubert*, 509, U.S. at 589, 592-93, 113 S. Ct. at 2795, 2796.............................10,11

5. *Id.* 595, 113 S. Ct. at 2797, 125 L.Ed.2d at 484.................................................12

6. *Dhillon v. Crown Controls Corporation*, 269 F.3d 865 (7th Cir. 2001)..................11

7. *Id.* citing *United States v Downing*, 753 F.2d 1224, (3rd Cir. 1985)......................12

8. *Kumho Tire Co. v Carmichael, Ltd.*, 526 U.S. 137, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999)..................................................................................................11

9. *Moore v Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)....................10,11

10. *Slaughter*, 919 F.2d at 306............................................................................13

11. *Slaughter*, 919 F.2d at 307............................................................................15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| JOSEPH SYLVESTER and MELINDA SYLVESTER | * | CIVIL ACTION NO.: 6:22-CV-05192 |
| | * | |
| VERSUS | * | |
| | * | |
| TALOS ENERGY OFFSHORE, LLC TALOS ENERGY, LLC, TALOS ERT LLC, RODI MARINE, L.L.C., RODI MARINE MANAGEMENT, LLC | * | JUDGE DAVID C. JOSEPH |
| and WOOD GROUP PSN INC. XYZ INSURANCE COMPANY | * | MAGISTRATE JUDGE CAROL B. WHITEHURST |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE/ MOTION TO STRIKE THE EXPERT TESTIMONY OF DR. CHAD DOMANGUE**

Because Dr. Domangue's opinions do not meet the standards set out in the Federal rules and *Daubert*, Plaintiffs, Joseph Sylvester and Melinda Sylvester submit this Motion to Exclude/ Motion to Strike the Expert Opinions and Testimony of Dr. Chad Domangue.

## I. FACTUAL BACKGROUND

On September 23, 2021, Joseph Sylvester was severely injured while being transferred from an offshore supply vessel to a fixed platform in the Gulf of Mexico known as South Marsh Island 130 A ("SMI 130 A"). At the time of his injury. Mr. Sylvester was being transferred by a crane operated personnel transfer basket from the M/V MISS PEGGY ANN, which was owned, operated, crewed and controlled by Defendant Rodi Marine to SMI 130 A. The SMI 130 A platform was owned by Defendant Talos Energy Offshore, LLC and the crane used in the transfer was operated by Defendant Wood Group.

At the time of this basket transfer and Mr. Sylvester's injury, the deck of the M/V MISS PEGGY ANN was filled with large conex boxes/storage containers and other equipment which

4

covered the loading zone of the vessel where the transfer needed to take place. As a result of these obstructions, the personnel basket was placed at the front of the vessel, among several metal conex boxes. Mr. Sylvester entered the platform's personnel basket in anticipation of the lift by the platform's crane operator, which was performed by a crane operator employed by Wood Group.

Upon starting the lift and the basket transfer, the crane operator on the SMI 130 A platform quickly lifted the transfer basket with Plaintiff, Joseph Sylvester and another individual inside, from the deck of the M/V MISS PEGGY ANN which caused the basket to swing.

At the same time, the Rodi Marine crew, including the deckhand, failed to properly hold onto/operate the tag-line attached to the personnel basket --which is designed to control the movement of the basket--while the crane operator hoisted the basket with Joseph Sylvester inside. As a result, the basket and Plaintiff crashed into a metal conex box on the deck of the M/V MISS PEGGY ANN causing injury. Overall, there was not adequate communication between the defendants who were performing this basket transfer which caused and/or largely contributed to Joseph Sylvester's injuries.

As a result of the incident, Joseph Sylvester suffered serious injuries including, but not limited to, injuries to his hip, back, and legs. As a result of his injuries, Joseph Sylvester suffered severe pain and swelling in his hip, thigh and leg and was diagnosed with a blood clot. Diagnostic imaging confirmed a DVT and pulmonary embolus. As a result, on October 27, 2021, a left lower leg thrombectomy surgery was performed at Our Lady of Lourdes Regional Medical Center. Thereafter, Joseph Sylvester's back pain persisted, and after other conservative treatment, Dr. Lon Baronne performed a transforaminal lumbar interbody fusion surgery at L5-S1. Dr. Baronne states that Mr. Sylvester will need an adjacent level transforaminal lumbar interbody fusion in the future, among other medical treatment.

## II. DR. CHAD DOMANGUE'S OPINIONS AND SUMMARY OF THE ARGUMENT

Dr. Chad Domangue has been hired by Defendants to recite Defendants' theories of the case as it relates to medical causation and the status of Joseph Sylvester's current and future problems and limitations and the need for future medical treatment. The problem here is that Dr. Domangue has provided opinions in this case that exceed his knowledge, experience and expertise. Dr. Domangue is a neurologist and pain management specialist who treats spine injuries and conditions. Dr. Domangue has no experience or expertise in treating patients with vascular conditions and/or vascular surgery. Nevertheless, this lack of experience and expertise has not stopped Dr. Domangue from providing opinions concerning vascular issues related to Joseph Sylvester's condition and treatment.

Furthermore, Defendants hired a vascular expert in this case, Dr. Christopher LaGraize. Notably, Dr. LaGraize's opinions in this case, as it relates to vascular issues, completely contradict the opinions provided by Dr. Domangue on the same topic. Consequently, Dr. Domangue's methodology and opinions cannot satisfy the criteria set out by *Daubert.*

Dr. Chad Domangue has been identified by Defendants as an expert in neurology and pain management, in this case and other cases. *See Defendants' Expert FRCP Rule 26 Designation and Disclosure of Expert Witnesses, p. 3; attached as Exhibit 1.* Furthermore, Dr. Domangue's CV provides an extensive list of 38 cases in which he has served as a litigation expert witness. *See Dr. Domangue's CV; attached as Exhibit 2.* In 35 of those cases, Dr. Domangue was certified as an expert in the fields of neurology, pain management or both.[1] In none of these cases was Dr. Domangue ever certified as an expert in vascular surgery or any vascular related specialty.

---

[1] In the other 3 cases, Dr. Domangue was certified once as an expert in "complex reginal pain syndrome" and twice as an expert in forensic psychiatry.

6

Dr. Domangue is not an expert in vascular issues or in vascular surgery. Dr. Domangue recognized this, and in his expert report in this case, stated the defendants needed to hire a vascular expert/specialist. To that end, Dr. Domangue stated specifically: "[i] do feel that a medical doctor with vascular expertise needs to be brought in on this case to evaluate the care specifically in this regard." *See Dr. Domangue's report, pg. 43; attached as Exhibit 3.* Even Dr. Domangue recognized his own limitations in his report, and, consequently, he should be limited from presenting any opinions concerning potential vascular problems and/or treatments related to Mr. Sylvester.

Nevertheless, while recognizing his limitations, Dr. Domangue without any expertise, medical support or factual support, doubles-down and provides multiple opinions concerning Joseph Sylvester's vascular injuries, condition, treatment and prognosis. In conclusion, Dr. Domangue provided the following opinion:

> "[i]t is my medical opinion that <u>all of his [Joseph Sylvester's] symptoms</u> are related to his <u>vascular abnormalities</u> and not his lumbar spine."

*See Dr. Domangue report, p. 44; Exhibit 3.* Dr. Domangue's opinion/conclusion is wrought with many fatal problems, including those noted above. Notably, Dr. Domangue, in his report, never identified or diagnosed any specific "vascular abnormalities" or vascular problems that he claims Joseph Sylvester had or still has. Dr. Domangue's opinions are completely unsupported. Moreover, Dr. Domangue has no such vascular expertise or experience, and such unsupported conclusions cannot be given to the jury.

This opinion by Dr. Domangue was not simply a fleeting and passing reference. Dr. Domangue attempted to provide support, but in doing so, clearly showed how far out of bounds he was, when he provided the following opinion:

> "**I feel it is clear that he has a vascular abnormality explaining his worsening ongoing symptoms and swelling.** He continues to develop clots despite being on anticoagulation. **I do feel that a medical doctor with vascular expertise needs to be brought in on this case to evaluate the care specifically in this regard**….. In my medical opinion, all the symptoms of his left hip and leg and new right leg (all current problems and will be for the rest of his life) **are secondary to vascular issues and not related to his lumbar spine**. After his back surgery, he does not make any significant improvement."

*See Dr. Domangue report at pg. 43; Exhibit 3.* In these statements, Dr. Domangue makes several astonishing and unsupported assertions -- that Joseph Sylvester's current problems are caused by "vascular abnormalities" that Dr. Domangue has failed to diagnose or even identify in his report.

What is so far-fetched about this opinion, is that Defendants' vascular expert, Dr. LaGraize, completely discredited Dr. Domangue's opinion that Joseph Sylvester is still suffering from vascular problems. With no equivocation, Dr. LaGraize opined that Joseph Sylvester's vascular problems were fixed/repaired with the October 2021 surgery/procedure. To be exact, Dr. LaGraize provided the following opinion:

> From a vascular standpoint, it is my opinion that Mr. Sylvester should have been able to return to work without restrictions in a matter of several weeks following the **successful treatment of his DVT condition** at early of Lourdes Medical Center.

*See report of Dr. Chris LaGraize, attached as Exhibit 4.* (emphasis added). With this testimony, Defendants' vascular expert opines rejects Dr. Domangue's opinion that Joseph Sylvester's ongoing symptoms over two years later are related to some "vascular abnormality" that Dr. Domangue failed to even identify.

The opinions given by Dr. Domangue in his report are not isolated. He has parroted these same vascular-related opinions and has provided them to other experts hired by the defendants. In fact, Dr. Domangue provided these same flawed opinions to Stanford McNabb, Defendants' life care planning and vocational expert, who relied on these opinions. In a follow up letter from Stan

8

McNabb to Dr. Domangue, following a consultation between them, Stan McNabb summarized the opinions provided by Dr. Domangue to Stan McNabb, which included the following:

2. Your [Dr. Domangue's] analysis and opinions to Mr. Sylvester include the following:
- Deep vein thrombosis, not related to the alleged incident.
- Pulmonary embolism, not related to the alleged incident.
- Mr. Sylvester's blood clotting problem continues to develop. There is no medical correlation between it and the alleged accident.

*See Doctor Conference with Signed Memo Received 12/15/23 by Dr. Stan McNabb of McNabb Rehabilitation Services, attached as Exhibit 5.* Dr. Domangue signed this statement as being a true and accurate summary of his opinions given to Stan McNabb. Again, Dr. Domangue stepped out of bounds and provided vascular opinions clearly outside of his expertise to Mr. McNabb who relied on them.

In conclusion, Dr. Domangue cannot be allowed to provide any opinions concerning vascular issues or treatment rendered to Joseph Sylvester for several reasons. *First*, Dr. Domangue has no expertise as a vascular specialist or vascular surgeon. *Second*, but related to the first, Dr. Domangue recognizes his limitations and lack of expertise in this subject area, and explicitly suggests that a vascular specialist needed to weigh in on Joseph Sylvester's potential vascular problems. *Third*, and most importantly, Defendants' own vascular expert/surgeon completely undermined Dr. Domangue's opinions that Joseph Sylvester's vascular problems are still ongoing.

Dr. Domangue's opinions on this topic do not meet any of threshold criteria required by *Daubert*. They are neither reliable, based on facts, justified by medical or science and are discredited by actual experts in that field. These vascular opinions of Dr. Domangue provide no useful information to the fact finder, and have the real potential of causing jury confusion, and therefore, should be stricken or limited in their entirety.

**III.   LAW AND ARGUMENT**

## A. Burden of Proof under *Daubert*

Under *Daubert* standards and Federal Rules of Evidence 702, the party who intends to call an expert witness has the burden of proof of the relevance and admissibility of that expert's testimony. In this case, the Defendants must show that the expert witness is qualified, the witness applied methodology which is acceptable under *Daubert* standards, and the witness will give testimony which is helpful to the jury. *Moore v Ashland Chemical, Inc.,* 151 F.3d 269 (5th Cir. 1998); *Dhillon v. Crown Controls Corporation,* 269 F.3d 865 (7th Cir. 2001). The proper means of determining the admissibility of the expert's testimony is through a *Daubert* hearing which Plaintiffs are hereby requesting.

Federal Rule of Evidence 702 was amended in 2000 to reflect the United States Supreme Court's decisions of *Daubert v Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.579, 113 S.Ct.2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v Carmichael, Ltd.*, 526 U.S. 137, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999). Federal Rules of Evidence 702 states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Daubert* changed the criteria for the admissibility of expert testimony and charged the trial courts to act as "gate keeper" to ensure that the proffered testimony is both relevant and reliable, *Daubert,* 509, U.S. at 589, 592-93, 113 S. Ct. at 2795, 2796.

*Daubert* provides a two-prong test for the trial judge to determine admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify (1) scientific knowledge that (2) will assist the trier of fact to understand or

determine a fact in issue." *Daubert,* 509 U.S. at 592, 113 S. Ct. at 2796. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595, 113 S. Ct. at 2796. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue." *Id.*

Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* 595, 113 S. Ct. at 2797, 125 L.Ed.2d at 484. Here, Dr. Domangue admits that he is not a vascular expert and, in turn, one is needed in order to provide such testimony in this case. Consequently, even Dr. Domangue knows that his opinions as it relates to Joseph Sylvester's vascular condition and treatment are not reliable.

The second prong, whether the prosed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert,* 509 at 591. Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving factual dispute. *Id.* citing *United States v Downing,* 753 F.2d 1224, (3rd Cir. 1985). When expert testimony is challenged under *Daubert,* the burden of proof rests with the party seeking to present the testimony. *Moore v Ashland Chemical, Inc.,* 151 F.3d 269, 276 (5th Cir. 1998).

Here, it is Defendants' burden to show how Dr. Domangue's unsupported, vascular-related opinions are reliable and relevant and will assist the jury in this case. This is an impossible task because without any such expertise, Dr. Domangue cannot provide any relevant opinions or testimony related to any alleged vascular problems suffered by Joseph Sylvester. Moreover, these

opinions will not assist and will only confuse the jury because Dr. Domangue's vascular opinions completely contradict the opinions of Defendants' own vascular expert, Dr. LaGraize. As demonstrated below, Domangue's opinions do not satisfy either prong of the *Daubert* test as his opinions are both unreliable and unhelpful.

With that background, the four requirements of Federal Rules of Evidence 702 will be applied in turn.

1. **Dr. Domangue's vascular opinions are unreliable because they are unsupported by any specialized knowledge that that will help the trier of fact understand the evidence or an issue**

As noted above, Dr. Domangue has no experience or expertise in diagnosing or treating vascular issues. Consequently, he brings no medical, scientific, technical or specialized knowledge that will help the trier of fact under the evidence or to determine a fact at issue.

2. **Dr. Domangue's opinions are unreliable because they are not based on sufficient facts or data.**

In determining the reliability of an expert's opinions, courts also may be required to examine the reliability of an expert's sources to determine whether they satisfy the threshold established by the rule *See FED. R. EVID. 702* (only allowing an expert to testify if "the testimony is based upon sufficient facts or data"); *Slaughter,* 919 F.2d at 306 (when the source upon which an expert's opinion relies is of such little weight that the testimony would not actually assist the jury, Rule 703 requires the court to examine the reliability of the expert's sources). In undertaking this examination, the Court must decide, as a matter of law, whether Dr. Domangue's opinions are supported by an adequate basis of fact as shown in the record. *Dana Richardson-Merrell, Inc.*, 857 F.2d. 823, 829 (D.C. Cir. 1988), *cert. denied,* 493 U.S. 882 (1989)).

Here, Dr. Domangue's vascular opinions are not even based on the analysis of a specific vascular injury, condition or treatment. In other words, his report fails to even mention any specific

vascular injury or condition. How can he then attempt to provide additional opinions about that condition without even identifying the condition? Apparently, Dr. Domingue was given instructions to provide opinions on the vascular situation without analyzing the specific vascular injury that Joseph Sylvester sustained and the treatment that he received for these alleged conditions.

One illustration of how the unreliability of Dr. Domangue's facts and data affect his opinions is the statement in his report where he refers to "vascular abnormalities" and "vascular issues", without any specificity or diagnosing the specific problems, then goes on to opine that these unknown vascular abnormalities are causing "all of his [Joseph Sylvester's] symptoms." *See Domangue report pgs. 43-44.*

With these unsupported opinions, not only are Dr. Domangue's vascular opinions unreliable, but so are his opinions concerning Joseph Sylvester's lumbar spine. In other words, Dr. Domangue rejects any notion that Joseph Sylvester's ongoing problems could be related to his lumbar spine by blaming these problems on some unknown "vascular abnormalities." This is a prime example of an expert failing to base his opinions on sufficient facts and data, and then bootstrapping that very same flawed information in order to gain more mileage. This concept must be rejected.

### 3. Dr. Domangue's opinions are unreliable because they are unsupported by reliable principles and methodology.

An expert in neurology and pain management only, who specializes in the spine, has no expertise and experience in treating vascular conditions, and does not possess the proper tools to diagnose, identify and treat a vascular condition. Consequently, the principles and methodology used by Dr. Domangue are unreliable.

Dr. Domangue makes conclusory statements without articulating a methodology, and failed to articulate a methodology in his report of how he specifically analyzed and diagnosed Joseph Sylvester's current "vascular abnormalities," as he called them. Nothing in the report gives any indication or credibility as to how Dr. Domangue arrived at these conclusions. Dr. Domangue expects the Court to accept these conclusions because he says, "it is so." *See Slaughter,* 919 F.2d at 307.

### 4. Dr. Domangue's opinions are unreliable because there is no evidence to suggest that his opinions satisfy the reliability factor.

Dr. Domangue gives no indication or attempt to show his work. In other words, Dr. Domangue failed to include anything in his report to show that he reliably applied proper principles and methods to the facts of this case. Dr. Domangue's most glaring failure in this regard is that he failed to consider the opinions of Dr. LaGraize, the Defendants' vascular expert. Dr. Domangue did not even recognize that his opinions are the polar opposite of, and contradict the opinions of Dr. LaGraize related to any vascular issues.

Overall, all of Dr. Domangue's opinions, not just those related to the vascular issues, fail to meet even the most basic requirements of the *Daubert* reliability test and should be stricken as unreliable and inadmissible. It begs the question, how can Dr. Domangue arrive at his ultimate conclusion in this case that – "it is my medical opinion that **all his symptoms** are related to his **vascular abnormalities and not to his lumbar spine**" – when he has no such vascular expertise. Incredibly, Dr. Domangue relies entirely on an expertise that he does not have to render his ultimate opinion, which completely undermines his credibility as it relates to spine-related issues. Dr. Domingue has failed to establish even the most basic foundation for his opinions. Consequently, any opinions Dr. Domangue provides with respect to Joseph Sylvester's current and future lumbar spine condition and treatment must be stricken as well.

Likewise, in addition to using flawed methodology, there is no special expertise or skill offered in connection with Dr. Domangue's vascular opinions. As to this issue, the jury can weigh the testimony and opinions of Mr. Sylvester's treaters and Dr. LaGraize and make a decision without Dr. Domangue's wholly unsupported and extremely flawed opinions.

## IV. CONCLUSION

Dr. Chad Domangue's report and opinions do not satisfy the requirements of *Daubert* because they are unsupported by any defensible methodology or specialized knowledge as it relates to vascular issues. Consequently, Dr. Domangue's report and opinions are unhelpful to the jury.

For these reasons, Plaintiffs respectfully request that this Court grant its motion to strike/exclude and limit Dr. Domangue's testimony and opinions as they relate to any vascular conditions or treatment of Joseph Sylvester. Dr. Domangue's own testimony would not provide the jury with any specialized knowledge as it relates to vascular issues.

Furthermore, due to the flawed methodology and unreliable information relied on by Dr. Domangue in his analysis, Plaintiffs respectfully request that this Court exclude Dr. Domangue from testifying at the trial of this matter on any issue.

Plaintiff also requests an Order prohibiting Dr. Chad Domangue from offering any opinions or testimony at the trial of this matter, prohibiting all parties and witnesses from making any reference to him, his report and his opinions at the trial of this matter, Plaintiff also requests such other and further relief, whether legal or equitable, to which it is justly entitled.

*SIGNATURE BLOCK AND CERTIFICATE OF SERVICE ON NEXT PAGE*

Respectfully Submitted,

**LABORDE EARLES LAW FIRM, LLC**

By: */s/ Nicholas R. Rockforte*
**NICHOLAS R. ROCKFORTE, Bar #31305**
*E-mail: service@onmyside.com*
1901 Kaliste Saloom Road
Lafayette, Louisiana 70508
Phone (337) 261-2617
Fax (337) 261-1934
***Attorney for Plaintiffs- Joseph and Melinda Sylvester***
*\*For all non-service relation communications,*
*please direct to nicholas@onmyside.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26TH day of December 2023, the foregoing document has been filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

*/s/ Nicholas R. Rockforte*
**NICHOLAS R. ROCKFORTE**