UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JOSEPH SYLVESTER, ET AL | CIVIL ACTION NO. 22-5192 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TALOS ENERGY OFFSHORE, LLC, ET AL | MAGISTRATE JUDGE WHITEHURST |

**MEMORANDUM RULING**

Before the Court are two Motions for Summary Judgment filed by defendants Wood Group PSN, Inc. ("Wood Group") and Talos Energy Offshore, LLC, Talos Energy, LLC, and Talos ERT, LLC, ("Talos") (collectively, "Defendants"). See Record Documents 53 & 55. Wood Group moves for summary judgment stating that Joseph Sylvester ("Sylvester") and Melinda Sylvester (collectively, "Plaintiffs") are legally precluded by the Longshore and Harbor Workers' Compensation Act ("LHWCA") from asserting a vicarious liability claim. Talos asserts the same. Plaintiffs filed oppositions. See Record Documents 76 & 78. Wood Group and Talos replied. See Record Documents 79 & 82. After careful consideration of the parties' submissions, and the law applicable before the Court, Defendants' Motions for Summary Judgment are **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This is a maritime negligence case that arises out of an accident involving Sylvester that allegedly occurred on September 23,2021. In 2021, Talos was the operator of the South Marsh Island 130 ("SMI 130") field, located in the Gulf of Mexico on the Outer Continental Shelf. See Record Document 53-3 (Declaration of Lonnie Smith) at 1. Talos' SMI 130 field consists of several oil and gas production platforms. See id. Wood Group furnished production operators to work in Tales' SMI 130 field pursuant to a Master

Service Agreement ("MSA") between Wood Group and Talos dated June 25,2013. See Record Document 53-8 (Declaration of Patricia Rodriguez) at 2. The SMI 130 field was regularly staffed by a combination of direct Talos employees along with contract production operators, including contract production operators who were payroll employees of Wood Group. See Record Document 55-3 (Declaration of Lonnie Richard) at 5.

Sylvester was employed as a crane mechanic by Gulf Crane Services, Inc. ("GCS"). See Record Document 1 at 3; Record Document 55-4 (Declaration of Shane Theunissen) at 2. Between April 2021 and October 2021, Sylvester was assigned to work for Talos on Talos's offshore production platforms in SM1130 field. See Record Document 55-5 (Deposition of Joseph Sylvester) at 7. On the date of the accident, Sylvester claims that he sustained personal injuries at approximately 9:30 a.m. while being transferred in a personnel basket from the M/V MISS PEGGY ANN ("the vessel") to Tabs' SMI 130 platform. See Record Document 1 at 2-6. He claims that when the crane operator, Brian Spears ("Spears"), lifted him in the basket, the basket swung rapidly causing it and Sylvester to "slam violently" into a Connex box that was on the deck of the vessel. Id.

Sylvester contends that the negligent operation of the SMI 130 platform crane by Spears caused or contributed to his injuries. See Record Document 1 at 11. Spears was a payroll employee of Wood Group and served as the crane operator on the SMI 130 platform during the day shift on the day of the incident. See Record Document 53-5 (Declaration of Bryan Spears) at 3. Three other Wood Group contract production operators were also present that day. See Record Document 55-3 at 6.

Sylvester filed the instant suit on September 6, 2022, claiming vessel negligence and platform/crane negligence. See Record Document 1. Wood Group filed its Motion for Summary Judgment on December 21, 2023 (Record Document 53), and Talos filed its Motion for Summary Judgment the next day (Record Document 55).

## SUMMARY JUDGMENT STANDARD

Rule 56(a) provides, in pertinent part:

> Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added); see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Quality Infusion Care, Inc., 628 F.3d at 728. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not

support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

## ANALYSIS

Under the LHWCA, as adopted in the Outer Continental Shelf Lands Act ("OCSLA") 43 U.S.C. § 1331 *et seq.*, employees are prevented from bringing tort actions against their employers and their recovery is limited to certain statutorily prescribed compensation benefits. See Melancon v. Amoco Production, 834 F.2d 1238, 1243-1244 (5th Cir. 1988). Because a borrowing employer enjoys the same protection as a nominal employer, a "borrowed employee" (also referred to as "borrowed servant") is also barred from suing the borrowing employer for anything more than workers' compensation benefits. Id.

Section 933(i) of the LHWCA provides that "[t]he right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured ... by the negligence or wrong of any other person or persons in the same employ." 33 U.S.C. § 933(i). "While this provision limits an employee's rights, it ... at the same time expands them by immunizing him against suits where he negligently injures a fellow worker." Perron v. Bell Maint. & Fabricators, Inc., 970 F.2d 1409, 1411 (5th Cir. 1992) (internal citation omitted). Therefore, if Spears and Sylvester are both found to be borrowed employees of Talos, Talos and Wood Group cannot be held vicariously liable for Spears' negligent actions because Sylvester is not entitled to recover for the negligence of a person "in the same employ."[1]

---

[1] Mosley v. Wood Grp. PSN, Inc., 760 F. App'x 352, 358 (5th Cir. 2019) ("Section 933(i) of the LHWCA says that '[t]he right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured ... by the negligence or wrong of any other person or persons in the same employ.'" The parties agree that based on this section, if Villemarette, Mosley, and Trahan are found to be borrowed

4

Whether an employee is a borrowed employee constitutes an issue of law for the Court to decide by applying the nine-factor test set forth by the United States Court of Appeals for the Fifth Circuit in Ruiz v. Shell Oil Co. See 413 F.2d 310 (5th Cir. 1969). The nine factors to consider are:

> (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
> (2) Whose work is being performed?
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
> (4) Did the employee acquiesce in the new work situation?
> (5) Did the original employer terminate his relationship with the employee?
> (6) Who furnished tools and place for performance?
> (7) Was the new employment over a considerable length of time?
> (8) Who had the right to discharge the employee?
> (9) Who had the obligation to pay the employee?

See id. No single factor, or combination of them, is determinative; although, in many cases, the Fifth Circuit has considered the first factor—control—to be the central factor. See, e.g., Melancon, 834 F.2d at 1245. The issue of borrowed employee status is a "'matter of law' for the district court to determine," but some cases involve factual disputes on the issue of borrowed employee status and require findings by a factfinder. See id. at 1244-45.

I. **Dual Employer Doctrine**

Plaintiffs assert that Wood Group's burden is much higher than Talos', as Talos need only prove that Sylvester is a borrowed employee while Wood Group must prove that both Spears and Sylvester were co-borrowed employees. See Record Document 78

---

employees of Fieldwood, Wood Group cannot be held vicariously liable for their negligent actions because Mosley was not entitled to recover for the negligence of "persons in the same employ.").

at 7. Plaintiffs argue that borrowed-servant theory claims against third-party tortfeasors like Wood Group and Talos and potential defenses to them are governed by Louisiana state law. They assert that the Louisiana Supreme Court's holding in Morgan v. ABC Manufacturer is controlling, where the Court held that both the lending and borrowing employers could be liable to an injured third party for the torts of the borrowed employee. See 710 So. 2d 1077, 1082 (La. 1998). Thus, Plaintiffs state that if even if Spears is a borrowed employee of Talos, which they dispute, Wood Group remains vicariously solidarily liable for his torts and Wood Group's motion should be denied without further consideration of Spears' borrowed employee status. See Record Document 78 at 9.

Wood Group argues that under OCSLA, state law applies only when not inconsistent with federal law, and that none of the precedent to which Plaintiffs cite suggest that state law applies in this case. See Record Document 82 at 2-3.

The Court finds that Wood Group has provided no basis that Morgan should not apply to this case through OCSLA. See Washington v. Fieldwood Energy, LLC, No. 15-6615, 2018 WL 263230 at *5 (E.D. La. Jan. 2, 2018) (Finding that "Wood Group has failed to convince this Court that the rule of Morgan should not apply to this case through OCSLA. Morgan holds that a lending employer is still liable for to an injured third party for the torts of the borrowed employee. Accordingly, Wood Group may still be vicariously liable for the negligence of it nominal employee, Roberts.") The Court will now move into consideration of the Ruiz factors.

### a. Sylvester

#### i. Who has control?

Talos argues that it is undisputed that all of the work instructions, orders, and assignments of Sylvester came from Talos' production personnel, not GCS, thus satisfying the first Ruiz factor. See Record Document 55-2 at 21. Wood Group asserts the same, stating that no one from GCS supervised, controlled, or directed Sylvester's work and that both companies, GCS and Talos, understood and expected Sylvester to follow Talos' orders. See Record Document 53-2 at 20. Plaintiffs state that Talos did not control the general work performed by GCS and Sylvester, and Talos did not control the basket transfer lift related work the injured Sylvester. See Record Document 78 at 24.

Applying the first factor, it appears that both GCS and Talos had some level of control over Sylvester. Sylvester's deposition testimony indicates that he received instructions and daily orders from Talos personnel. See Record Document 53-7. On the other hand, Shane Theunissen ("Theunissen"), the GCS account manager for the Talos account at the time of Sylvester's injury, testified that he was Sylvester's supervisor and that Sylvester would report to him daily as required by GCS as a company. See Record Document 55-4 at 11-15.

Further, the MSA stated: "Contractor [GCS] conclusively shall be deemed an independent contractor, with the authority and right to direct and control all of the details of the Work, Company [Talos] being interested only in the result obtained, but all Work contemplated shall meet the approval of Company [Talos] and shall be subject to Company's [Talos'] general right of inspection; (b) the employees, agents, and representatives of Contractor [GCS] at all times shall be under the direct and sole

7

supervision and control of Contractor [GCS] and (c) no relationship of master and servant or of principal and agent shall exist between Company [Talos] on the one hand and Contractor [GCS] or any employee, agent or representative of Contractor [GCS] on the other hand." See Record Document 76-1.

The contractual language explicitly states that GCS's employees are not subject to the control or direction of Talos, which directly conflicts with certain deposition testimony. Further, the contract contains language stating that "[n]o amendment, change, modification . . . shall be binding on any Party unless made in writing, signed by the Parties, and specifically referencing this agreement." Record Document 76-1. "Whether the parties had an understanding that modified the contract may raise disputed factual issues." Brown v. Union Oil Co. of California, 984 F.2d 674, 678 (5th Cir. 1993) (citing Melancon, 834 F.2d at 1245 n.13). In Brown v. Union Oil Co. of California, the Fifth Circuit held that conflicting evidence regarding whether the parties impliedly modified the contract raised a factual dispute that should be determined by a factfinder when the remaining factors do not overwhelming show that the employee was a borrowed employee. See id. at 679. Considering this precedent and the conflicting evidence in the record, the Court finds that there are fact issues in dispute on the issue of control. As such, the Court will briefly address the remaining Ruiz factors to determine whether they overwhelmingly show that Sylvester was a borrowed employee.

   ii. Whose work is being performed?

Talos asserts that it is undisputed that Sylvester performed Talos' work, as he tested, serviced, maintained, and repaired cranes on Talos' platforms and his work assisted in the production of oil and natural gas from wells associated with Talos'

platforms in the SMI field. See Record Document 55-2 at 21. Wood Group states that the work Sylvester performed in the SMI 130 field was in support of Talos' oil and gas production operations. See Record Document 53-2 at 21. Plaintiffs argue that Talos is in the business of drilling for, producing, and extracting natural resources from the Gulf of Mexico, not providing maintenance for cranes. Sylvester's work was an "essential, although only incidental" aspect of Talos' work. Melancon, 834 F.2d at 1245. Thus, this factor weighs in favor of a finding of borrowed servant status.

### iii. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

Talos asserts that although Section 5 of the MSA provides that GCS's payroll employees are independent contractors, neither contract prohibits Talos from becoming the borrowing employer of Sylvester. See Record Document 55-2 at 22. It states that the Fifth Circuit has held the terms of the contract between the borrowing employer and payroll employer do not ordinarily provide a sufficient basis to deny summary judgment when the remaining Ruiz factors point toward borrowed servant status. See id. (citing Alexander v. Chevron, U.S.A., 806 F.2d 526, 529 (5th Cir. 1986)). Wood Group provides similar argument, stating that without question there was a "meeting of the minds" between GCS and Talos concerning control over Sylvester's work in the field, despite the language in its agreement regarding Sylvester being an independent contractor. Record Document 53-2 at 21-22.

As stated above, the MSA between GCS and Talos appears to directly conflict with the actions carried out by the parties. While the Fifth Circuit has noted that the reality at the worksite and the parties' actions in carrying out a contract can impliedly modify, alter, or waive express contract provisions, the MSA clearly states that no provision of the

contract can be altered or modified without written notice signed by the parties. As such, there are factual issues in dispute as to this factor. See Stauffer Chemical Co. v. W.D. Brunson, 380 F.2d 174, 182 (5th Cir. 1967).

      iv.   Did the employee acquiesce in the new work situation?

During the roughly six months that Sylvester worked at SMI 130, it appears that he had no complaints regarding his working conditions, therefore it seems that Sylvester acquiesced to his working arrangement. Thus, this factor weighs in favor of a finding of borrowed servant status.

      v.   Did the original employer terminate its relationship with the employee?

The Court does not find that GCS terminated its relationship with Sylvester. While this factor does not "require a lending employer to completely sever his relationship with the employee," it does require that the lending employer "cease control in its servant." Mays v. Dir., Off. of Workers' Comp. Programs, 938 F.3d 637, 645 (5th Cir. 2019). Deposition testimony shows that Sylvester was required to make some form of contact with GCS daily. Further, GCS remained in control of Sylvester's employee benefits. Thus, this factor weighs against a finding of borrowed servant status.

      vi.   Who furnished tools and place for performance?

Sylvester stated that he furnished some of his own tools required for work, some of his tools were provided by GCS, Talos provided the "larger tools sometimes needed by Sylvester to work on the cranes," and Talos provided the place of performance and transportation to and from the place of performance. The Court finds that this factor is neutral.

vii. <u>Was the new employment for a considerable length of time?</u>

Wood Group states that because both GCS and Talos considered Sylvester's assignment to be permanent, this factor supports Sylvester's borrowed servant status. <u>See</u> Record Document 53-2 at 24. Talos asserts that the six months before his alleged accident was enough to support his status as a borrowed employee. <u>See</u> Record Document 55-2 at 26. Plaintiffs argue that it is debatable whether Sylvester worked on the platform for a "considerable" amount of time. Record Document 76 at 37. The Fifth Circuit has noted that when "the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee," but that "the converse is not true." <u>Capps</u>, 784 F.2d at 618. In <u>Capps</u>, the plaintiff's injury occurred on his first day of work, and the Fifth Circuit found that this factor was neutral. In <u>Theophile v. Trinity Industries, Inc.</u>, the plaintiff was injured after two weeks on the job but the court found that testimony indicating an expectation of continued employment weighed in favor of borrowed employee status. 977 F.Supp. 782 (E.D. La. 1997). However, courts have debated what constitutes a "considerable" length of time. In <u>Brown</u>, the Fifth Circuit found an employment duration of one month to be neutral. <u>See</u> <u>Brown</u>, 984 F.2d at 674. The Court finds that, in light of previous holdings, this factor is neutral.

viii. <u>Who had the right to discharge the employee?</u>

The eighth <u>Ruiz</u> factor asks who had the right to discharge the employee. "The proper focus when considering who has the right to discharge the employee" is whether the purported borrower "had the right to terminate [the worker's] services with *itself*," not his employment with the lending employer. <u>Mays</u>, 938 F.3d at 646 (citing <u>Capps v. N.L. Baroid-NL Industries, Inc.</u>, 784 F.2d 615, 618 (5th Cir. 1986) (emphasis added)). The Fifth

11

Circuit has held that this factor weighed in favor of borrowed employee status where a borrowing employer had the right to remove men from their position on the platform. See Mosley, 760 F. App'x at 362. Talos had the right to remove Sylvester from his position on its platform. Thus, this factor weighs in favor of a finding of borrowed servant status.

> ix. Who had the obligation to pay the employee?

Wood Group argues that the amount of Sylvester's paycheck from GCS was based purely on the number of hours approved by Talos. See Record Document 53-2 at 25. Talos argues the same in that it "effectively" had the obligation to pay Sylvester. Record Document 55-2 at 27. Plaintiffs state that GCS had the obligation to pay and did pay Sylvester's paycheck, and it deducted federal and state taxes, and provided all his employee benefits. Record Document 76 at 39. Based on these assertions, the Court finds that this factor weighs against a borrowed employee status.

Based on the contractual provisions laid out above, and the testimony and conduct highlighted by both parties, there is conflicting evidence regarding at least two of the nine Ruiz factors. The remaining factors do not "overwhelmingly" show that Sylvester was a borrowed employee. Given the disputes of fact regarding the most critical factor–control the parties exercised–the Court denies summary judgment. Because the Court finds that there are facts in dispute precluding summary judgment on the issue of whether Sylvester was a borrowed employee of Talos, the Court need not reach the issue of whether Spears was a borrowed employee of Talos.

## CONCLUSION

For the reasons stated herein, the Court finds that several factual disputes preclude summary judgment. The factual disputes will be resolved by the jury as factfinder at trial, and then the Court will determine Sylvester and Spears' borrowed employee status as a matter of law. Accordingly,

**IT IS ORDERED** that the Motions for Summary Judgment (Record Documents 53 & 55) are **DENIED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this the 3rd day of September, 2024.

_____
United States District Judge