UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JOSEPH SYLVESTER, ET AL | CIVIL ACTION NO. 22-5192 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TALOS ENERGY OFFSHORE, LLC, ET AL | MAGISTRATE JUDGE WHITEHURST |

**MEMORANDUM RULING**

Before the Court is a Motion to Exclude/Motion to Strike Simon Varley ("Varley") or Any Individuals at Purpose Legal as a Witness filed by Plaintiffs Joseph Sylvester ("Mr. Sylvester") and Melinda Sylvester ("Mrs. Sylvester") (collectively, "Plaintiffs"). See Record Document 57. Plaintiffs' grounds for this motion are that Defendants failed to timely identify Varley as an expert, produce an expert report, and identify Varley in their discovery responses or witness lists. See Record Document 57 at 1–2. Defendants Talos Energy Offshore, LLC, Talos Energy, LLC, Talos ERT, LLC, Rodi Marine, L.L.C., Rodi Marine Management, LLC, Wood Group PSN Inc., and XYZ Insurance Company (collectively, "Defendants") oppose the motion. See Record Document 68. Plaintiffs filed a reply as to this motion. See Record Document 81. For the reasons set forth below, Plaintiffs' motion (Record Document 57) is **DENIED**.

**BACKGROUND**

This is a maritime negligence case that arises out of an accident involving Mr. Sylvester that allegedly occurred on September 23, 2021. In 2021, Talos was the operator of the South Marsh Island 130 ("SMI 130") field, located in the Gulf of Mexico on the Outer

Continental Shelf. See Record Document 53-3 (Declaration of Lonnie Smith) at 1. Talos's SMI 130 field consists of several oil and gas production platforms. See id.

Mr. Sylvester was employed as a crane mechanic by Gulf Crane Services, Inc. ("GCS"). See Record Document 1 at 3; Record Document 55-4 (Declaration of Shane Theunissen) at 2. Between April 2021 and October 2021, Mr. Sylvester was assigned to work for Talos on Talos's offshore production platforms in SM1130 field. See Record Document 55-5 (Deposition of Joseph Sylvester) at 7. On the date of the accident, Mr. Sylvester claims that he sustained personal injuries at approximately 9:30 a.m. while being transferred in a personnel basket from the M/V MISS PEGGY ANN ("the vessel") to Tabs's SMI 130 platform. See Record Document 1 at 2–6. He claims that when the crane operator, Brian Spears ("Spears"), lifted him in the basket, the basket swung rapidly causing it and Mr. Sylvester to "slam violently" into a Connex box that was on the deck of the vessel. See id. Mr. Sylvester contends that the negligent operation of the SMI 130 platform crane by Spears caused or contributed to his injuries. See id. at 11.

Mr. Sylvester notified his wife about his incident via text message. See Record Document 57-2 at 3. Those messages were printed out by Plaintiffs' counsel and produced to Defendants through discovery. See id. Mr. Sylvester was first questioned about these text messages during his deposition on June 21, 2023. See id. Defendants moved for an order asking this Court to allow them to extract data and text messages for an extended period of time from the Plaintiffs' phones. See id. at 3–4. The Court entered an order limiting the search of Plaintiffs' phones for text messages from September 23, 2021, and September 24, 2021. See id. at 4.

Defendants retained Varley, a forensic analyst employed by Purpose Legal, to search and collect all available text messages from Plaintiffs' cell phones. See Record Document 68 at 9. Defendants' deadline to identify experts and provide expert reports was November 27, 2023. See Record Document 46 at 1. Defendants failed to identify Varley or anyone at Purpose Legal as an expert witness or provide an expert report. See Record Document 57 at 1. Defendants assert that neither Varley nor anyone at Purpose Legal was retained as an expert witness. See Record Document 68 at 10. Rather, Varley served as a neutral third party for the limited purpose of collecting two days' worth of text messages from Plaintiffs' phones. See id. at 5. Defendants maintain that if Varley is called to testify at trial or if excerpts from his deposition are offered at trial, the questioning will be limited pursuant to the Protocol issued by the Court. See id.

Defendants assert that even if Varley is considered an expert witness, Defendants could not have disclosed his status prior to the deadline due to delays in the collection and review of the text messages purposely caused by Plaintiffs and their counsel. See id. at 5–6. Furthermore, his testimony should be allowed under an application of the four factors derived from Stewart v. Gruber, No. 23-30129, 2023 WL 8643633 (5th Cir. Dec. 14, 2023). See id. at 13.

## LAW AND ANALYSIS

### I. Lay Testimony versus Expert Testimony.

Federal Rule of Evidence 701 discusses the limitations of a lay witness testimony. Lay testimony is limited to information that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge

3

within the scope of Rule 702." Fed. R. Evid. 701. Federal Rule of Evidence 702 discusses testimony by expert witnesses. An expert witness is qualified by their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Expert testimony is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Fifth Circuit has further clarified that the "'distinction between lay and expert witness testimony is that lay testimony "results from a process of reasoning familiar in everyday life," while expert testimony "results from a process of reasoning which can be mastered only be specialists in the field."'" U.S. v. Breland, 366 Fed. Appx. 548, 552 (5th Cir. 2010) (quoting Fed. R. Evid. 701, advisory committee's note to 2000 amendments).

## II. Standards for Disclosure of Expert Witnesses.

Federal Rule of Civil Procedure 26 deals with the duty to disclose. Under Rule 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report…if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involved giving expert testimony." FED. R. CIV. P. 26(a)(2)(B).

If a party fails to disclose the identity of an expert witness, accompanied by the expert report, that party may face sanctions under Rule 37. Under FRCP 37(c)(1):

4

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on that motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

FED. R. CIV. P. 37(c)(1). In Stewart v. Gruber, the Fifth Circuit established four factors to consider when determining whether a party was justified in failing to disclose an expert witness. 2023 WL 8643633, at *4. The four factors are the following: "'(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice.'" Id. (quoting Geiserman v. MacDonald, 893 F. 2d 787, 791 (5th Cir. 1990)).

**III. Analysis.**

Plaintiffs contend Varley is an expert witness because he orchestrated the search and extraction of data from the cell phones with a specialized software and tool. See Record Document 57-2 at 4. Plaintiffs maintain Varley is an expert witness because he has served as a litigation expert witness in several other cases. See id. Furthermore, his performed task requires specialized knowledge in order to extract, collect, and interpret the data. See id.

Defendants oppose, stating Varley and Purpose Legal were retained to perform an independent service for the purpose of collecting text messages from the Plaintiffs' cell phones over a specified time period. See Record Document 68 at 7. Defendants

5

submit that Varley has offered expert testimony is previous cases; however, he is not acting as an expert in the instant case. See id. at 10. In his deposition, Varley explained that some of his assignments are investigation cases, in which he is called upon to perform a detailed analysis and serve as an expert witness after preparation of an expert report. See id. However, other assignments are simply data collection cases for which he is tasked only with collecting a specific set of data from an electronic device and producing said data to the customer. See id. The Court agrees with Defendants that this is a data collection case.

In U.S. v. McMillan, the Fifth Circuit held that the three-fact witnesses did not qualify as expert witnesses; thus, their testimony was not improper. 600 F. 3d 434, 455 (5th Cir. 2010). Even though some of the testimony included specialized knowledge and conclusions, the court ultimately concluded the witnesses were fact witnesses because they testified "about their observations and perceptions in the case in response to specific solicitations…." Id. at 456. In McMillan, the court cited to U.S. v. Rigas, in which the Second Circuit held, "'A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony "expert" as long as it was based on his "investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise…."'" Id. at fn 72 (quoting U.S. v. Rigas, 490 F. 3d 208, 244 (2nd Cir. 2007)).

The instant case was purely a collection and e-discovery case. See Record Document 92-7 at 9. Varley only provided opinions as to the collection, not the case itself. See id. Even though Varley is using some specialized knowledge, he is providing an opinion on how the forensic tool operates, not as to the actual case. See id. at 17–18.

6

Similar to the fact witnesses in McMillan, Varley is presenting information relating to his observations and perceptions in response to specific solicitations from Purpose Legal and Defendants, all in accordance with Magistrate Judge Whitehurst's order issued on October 17, 2023. See Record Document 52.

Another Fifth Circuit case that helps illustrate the difference between lay testimony and expert testimony is U.S. v. Miranda. 248 F. 3d 434 (5th Cir. 2001). The defendant argued "that the district court abused its discretion because [the witness's] testimony 'crossed the line' from lay to expert opinion testimony." Id. at 441. The Fifth Circuit disagreed with the defendant. Id. The witness was an FBI agent who "identified various code words that callers had used and the English drug terms to which the words referred." Id. The court held that the agent was not testifying as an expert witness; rather, he had "'the necessary expertise to be able to give this testimony in light of his experience in the law enforcement area.'" Id. The agent heavily participated in the investigation, and the court still found that he was a fact witness. Id.

In the instant case, Varley was not given any details about this case. See Record Document 92-7 at 4. In fact, in his deposition, he testified that he did not have any idea of the subject matter of the case or the text messages. See id. Additionally, Varley had not reviewed any deposition transcripts in this case. See id. at 8. Varley's job is not to testify as to whether the text messages and screenshots are fabricated or to interpret the text messages in any way. See id. at 6. He has less involvement in this case than the fact witnesses in McMillan and Miranda. As long as Varley limits his testimony to observations in this case in response to the specific solicitation from Defendants, he is not an expert witness. Therefore, Defendants did not have to disclose Varley as an expert or produce

7

an expert report. Defense counsel, Varley, and Purpose Legal are cautioned to strictly adhere to the protocol issued by the Court, thereby preventing any veer into the realm of expert testimony.[1]

## CONCLUSION

Based on the foregoing analysis, this Court finds that there are no sufficient grounds to exclude or strike Varley or any individual at Purpose Legal as a witness. Varley and any individual from Purpose Legal are lay, fact witnesses and not experts. Neither Varley nor any individual from Purpose Legal may testify as an expert witness. Accordingly, Plaintiff's Motion to Exclude/Motion to Strike Simon Varley or Any Individuals at Purpose Legal as a Witness (Record Document 57) shall be **DENIED**.

An order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 25th day of September, 2024.

_____
United States District Judge

---

[1] Since Varley is not an expert witness, discussion of the Stewart factors is not warranted.